UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**CHHJ FRANCHISING LLC**,

    Plaintiff,

v.                                                    Case No. 8:23-cv-01979-WFJ-AAS

**VICTOR SPAULDING** and
**SPAULDING HAULING & MOVING LLC**,

    Defendants.

_____/

## ORDER

Before the Court is Spaulding Hauling & Moving LLC's ("Spaulding Hauling") and Victor Spaulding's (collectively, "Defendants") Motion to Dismiss (Dkt. 29) CHHJ Franchising LLC's ("Plaintiff") Amended Complaint (Dkt. 25). Plaintiff filed a Response (Dkt. 32) and Defendant submitted a Reply (Dkt. 33). After careful consideration, the Court grants in part and denies in part Defendants' Motion.

## BACKGROUND

Plaintiff, a moving and junk removal franchise, brings this seven-count Amended Complaint against Defendants, their former franchisees. Plaintiff accuses Defendants of breaching a post-termination non-compete agreement and of

continuing their use of Plaintiff's trademarks to advertise a competing business after the parties' relationship had terminated. Plaintiff alleges the following facts relevant to the instant Motion to Dismiss: Since about 2003, Plaintiff has operated as the College Hunks Hauling Junk ("CHHJ") franchise. Dkt. 25 ¶¶ 9–12. During that time, it has made use of various names and marks that are registered with the U.S. Patent and Trademark Office. *Id.* In May 2021, the parties agreed that Defendants would open a CHHJ franchise business in New Jersey. *Id.* ¶ 19. For a time, Defendants operated their CHHJ business, governed by a franchise agreement ("Franchise Agreement") signed by the parties.

 Defendants allegedly failed to comply with certain provisions of the Franchise Agreement. *Id.* ¶¶ 45–52. Subsequently, Plaintiff sent a Notice of Default with Right to Cure on January 27, 2023, two Notices of Default and Termination with Opportunity to Cure in February and April 2023, and a Notice of Termination on June 26, 2023. *Id.*

 Defendants did not respond to any of Plaintiff's notices. *Id.* Further, Plaintiffs allege that Defendants began operating a competing moving and junk hauling business prior to and after the Franchise Agreement was terminated. *Id.* The Complaint states that, after the termination, Defendants used CHHJ trademarks in connection with the competing business. *See generally id.*

Specifically, Plaintiff asserts that Defendants operated their new business, Spaulding Hauling & Moving from the same address as the CHHJ franchise. *Id.* ¶ 56. At that address, Defendants allegedly continued to display an exterior sign bearing the CHHJ mark while also using equipment labeled "Spaulding Hauling & Moving." *Id.* ¶ 56. Plaintiff further avers that, after termination of the Franchise Agreement, Defendants advertised both the CHHJ franchise and Spaulding Hauling on third-party websites (the Chamber of Commerce, a local Chamber of Commerce webpage, Nextdoor, and Alignable). *Id.* ¶¶ 59–66. Several of the websites bearing CHHJ marks advertised phone numbers and an address connected to Spaulding Hauling & Moving. *Id.* ¶¶ 64, 74.

Plaintiff sent Defendants a Cease & Desist and Demand for Payment on July 26, 2023. *Id.* ¶ 80. After Defendants did not respond, Plaintiff filed the instant lawsuit. *Id.* ¶ 81. Plaintiffs allege seven counts: (1) Breach of Franchise Agreement, against Spauling Hauling; (2) Breach of Guaranty, against Mr. Spaulding; (3) Federal Trademark Infringement; (4) Federal Unfair Competition and False Designation of Origin; (5) Florida Common Law Unfair Competition; (6) a request for preliminary and permanent injunction; and (7) a request for attorney's fees.

Defendants filed the instant Motion to Dismiss on November 2, 2023. They argue that Counts III through VII fail to state a claim upon which relief may be

3

granted. Dkt. 29 at 13, 19, 22. Moreover, they argue that Counts I and II arise under state law, so the Court should decline jurisdiction over them after its dismissal of the federal question claims. *Id.* at 22–23. In their Motion, Defendants contest the allegation that they operated a competing business post-termination. Dkt. 29 at 17–18. They also contest that they control third party websites or exterior signage at their rented office, and that the phone numbers posted on webpages with the CHHJ marks were transferred to Spaulding Hauling & Moving. *Id.* In support of their factual claims, Defendants attached exhibits to their Motion.

For the reasons outlined below, the Court grants the Motion in part and denies it in part.

## LEGAL STANDARD

To survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In considering the motion, the Court must accept all factual allegations of the complaint as true and construe them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008) (citation omitted). The Court should limit its "consideration to the well-pleaded factual allegations,

documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (citations omitted).

## DISCUSSION

As an initial matter, the Court did not consider the exhibits attached to Defendants' Motion to Dismiss. Thus, it need not accept Defendants' invitation to convert the Motion into one for summary judgment. *See Harper v. Lawrence Cnty.*, 529 F.3d 1227, 1232 (11th Cir. 2010). In ruling on the Motion to Dismiss, the Court will discuss the trademark infringement and unfair competition claims first, followed by Plaintiff's requests for injunctive relief and attorneys fees.

**A. Counts III, IV, and V: Trademark Infringement and Unfair Competition**

Count III asserts that Defendants violated Section 32 of the Lanham Act, codified at 15 U.S.C. § 1114. Dkt. 25 ¶ 96. Counts IV and V allege that Defendants engaged in unfair competition, in violation of Section 43(a) of the Lanham Act (codified at 15 U.S.C. § 1125) and Florida common law. Dkt. 25 ¶¶ 97–100. Defendants concede that "the analysis is the same" for claims under §1114, § 1125, and Florida common law. *Babbit Electronics, Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1181 (11th Cir. 1994); Dkt. 29 at 19–20. Because Plaintiffs state a claim for trademark infringement under Count III, they also state a claim for unfair competition under Counts IV and V. *Babbit*, 38 F.3d at 1181 (explaining that §

5

1125 is broader than § 1141, so the facts stating a cause of action under § 1114 will also state a claim under § 1125).

In relevant part, § 1114 provides that:

Any person who shall, without the consent of the registrant[,] use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . shall be liable in a civil action by the registrant for the remedies hereinafter provided.

The Lanham Act "is designed to protect consumers who have formed particular associations with a mark from buying a competing product using the same or substantially similar mark[.]" *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 676 (9th Cir. 2005); *see also N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1218 n. 5, 7 (11th Cir. 2008) (citing *Kremer*'s analysis approvingly).

To state a claim for trademark infringement, the Amended Complaint must allege that: (1) Plaintiff possesses valid marks; (2) Defendants used Plaintiff's mark(s) "in commerce . . . in connection with the sale . . . or advertising" of their services; and (3) Defendants' use was in a manner "likely to cause confusion." *N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1218 (11th Cir. 2008). Defendants concede that Plaintiff owns a valid mark, but they argue that Plaintiff fails to show the other elements of trademark infringement. Dkt. 29 at 13. The

6

Court will first address Defendants' alleged use of the marks in connection with sales or advertising, and then discuss the likelihood of confusion.

    i.    *The Complaint adequately alleges that Defendants used CHHJ's mark in connection with the sale or advertising of services.*

To make out the "use in connection" element, Plaintiff must state facts showing "use of any type" connected to the sale or advertising of its services. *VersaTop Supp. Sys., LLC v. Ga. Expo, Inc.*, 921 F.3d 1364, 1369 (Fed. Cir. 2019). This is a broad standard. *See Express Franchise Srvs. v. Impact Outsourcing Sols.*, 244 F. Supp. 3d 1368, 1376 (N.D. Ga. 2017) (finding the defendant's use of a mark in online help-wanted advertisements "sufficiently connected to [defendant's] services to satisfy the 'in connection with' requirements of § 1114(1)(a)," even though the mark was used only to solicit job applicants, not to sell or advertise the services themselves). The Court will address the use of CHHJ's marks on exterior signage first, followed by use of the marks on third-party websites.

  a.  <u>CHHJ Exterior Sign</u>

The Amended Complaint alleges that after the Franchise Agreement terminated, Defendants continued to exhibit a sign with Plaintiff's mark on the exterior of their office building. This states a claim for infringing use under Section 32. *See Choice Hotel Int'l, Inc. v. Frontier Hotels, Inc.*, H-15-2355, 2016 WL 4367993, at *2–3 (S.D. Tex. Aug. 15, 2016) (finding that a former franchisee infringed the plaintiff's marks when it failed to remove them from exterior signage

7

or from a third-party website); *Bridgestone Brands, LLC*, 15-cv-00857-JPM-bdh, 2017 WL 11476333, at *2 (M.D. Tenn. Apr. 27, 2017) (finding that a former authorized dealer violated § 32 when he failed to remove exterior signs with plaintiff's marks after the termination of the parties' affiliation agreement).

Defendants argue that, concerning the sign, they "never 'used' the marks within the meaning of that term as it appears in the Lanham Act" for two reasons: (1) they "did not do anything other than passively allow a pre-existing sign" to remain on their building; and (2) they "never offered or provided any junk hauling or moving services at the office space in question, or elsewhere." Dkt. 29 at 15.

As an initial matter, Defendants' assertion that they ceased offering moving and junk hauling services on June 26, 2023, Dkt. 29 at 16–17, is factually inapposite to the Amended Complaint, Dkt. 25 ¶ 67–74. Plaintiff alleges that Defendants set up a Spaulding Hauling Facebook page and operated Spaulding Hauling trucks after termination of the Franchise Agreement. *Id.*; *see also* Dkt. 32- ¶ 14. From these facts, accepted as true for purposes of the Motion to Dismiss, the Court can reasonably infer that Defendants were offering junk hauling and moving services after the termination. Further, Plaintiff asserts in its Response that Defendants used the CJJH mark to advertise a competing business as late as October 19, 2022—months after the termination of the Franchise Agreement. Dkt. 32 at 5–6; 14.

As a result, neither of Defendants' arguments as to the exterior sign justify dismissal. First, Defendants were required under the Franchise Agreement to "immediately discontinue the use of . . . Proprietary Marks[.]" Dkt. 25-2 ¶ 19.9. This naturally will require taking some "affirmative steps to deidentify" themselves with their former franchise. *Dandy Oil, Inc. v. Knight Enters., Inc.*, 654 F. Supp. 1265, 1271 (E.D. Mich. Mar. 6, 1987). Second, Defendants' use of the CHHJ mark at their office space is in connection with their sale or advertising of services, even if they did not provide the services (or even meet with customers) at that location. *See Express Franchise Srvs.*, 244 F. Supp. at 1376. From the presence of a Spaulding Hauling truck outside Defendants' office space, the Court may infer that the building has some connection to the services Defendants allegedly provided. This connection need not be direct to satisfy the requirements of § 1114. *See id.*

Relying on § 1127, Defendants also argue that a mark is used in commerce only "when it is used or displayed in the sale or advertising of services and the services are rendered in commerce." Dkt. 29 at 15 (quoting § 1127). But "this statutory definition of in commerce applies to the use of a trademark for purposes of federal registration." *VersaTop*, 921 F.3d at 1369. In contrast, the term "in commerce" in § 1114 is a "jurisdictional predicate." *N. Am. Med. Corp.*, 522 F.3d at 1218 n. 5. The focus of § 1114 is not "in commerce," but rather "in connection with the sale of goods or services." *Id.* at 1220 n.7. Because "an infringing use may

9

be 'use of any type,'" *VersaTop*, 921 F.3d at 1369 (quoting S. Rep. No. 100-515, at 45 (1988)), Defendants' display of Plaintiff's mark at its office spaces is "use" within the meaning of § 1114.

    b. <u>Third Party Websites</u>

The Amended Complaint asserts that "Defendants continue to advertise their competing moving and junk hauling services business through various social media and other online platforms," using the CHHJ marks in those advertisements. Dkt. 25 ¶ 59. Displaying the CHHJ marks on a webpage that relays Spaulding Hauling's physical address, *id.* ¶¶ 60, 64, 65, and phone number, *id.* ¶ 66, is a use in connection with the sale or advertising of services, *Choice Hotel Int'l*, 2016 WL 4367993, at *3 (infringer used mark on a "hotel booking site"); *TWTB, Inc. v. Rampick*, 152 F. Supp. 549, 564–65 (E.D. La. 2006) (former licensee infringed when it continued using licensor's marks on Facebook, Yelp, Instagram, and TripAdvisor).

Defendants contend that they "do not have possession or control over these third-party websites." Dkt. 29 at 3. It is plausible that Defendants may not control the websites. *See, e.g.*, *Frenchy's Corp., Inc. v. Frenchy's Pizzeria & Tavern, Inc.*, 2018 WL 3104452, at *4 (M.D. Fla. June 6, 2018). However, it is equally plausible that Defendants are able to have CHHJ's marks removed from these webpages. *See Choice Hotel Int'l*, 2016 WL 4367993, at *3; *TWTB, Inc.*, 152 F. Supp. at 564–65.

10

Indeed, as Plaintiff argues, the fact that some third-party websites removed listings with the CHHJ marks at Defendants' request allows the Court to reasonably infer that Defendants exercise some control over the listings. Dkt. 29 at 9; Dkt. 32 at 14.

Based on the foregoing, the Complaint adequately pleads that Defendants used CHHJ's protected marks in connection with trade or commerce.

    ii.    *Defendant's use of the CHHJ marks was likely to cause confusion.*

The Eleventh Circuit considers seven factors relevant to likely confusion:

> (1) the strength of the plaintiff's mark; (2) the similarity between the plaintiff's mark and the allegedly infringing mark; (3) the similarity between the products and services offered by the plaintiff and defendant; (4) the similarity of the sales methods; (5) the similarity of advertising methods; (6) the defendant's intent, e.g., does the defendant hope to gain competitive advantage by associating his product with the plaintiff's established mark; and (7) actual confusion.

*Alliance Metals, Inc. v. Hinely Indus., Inc.*, 222 F.3d 895, 907 (11th Cir. 2000). Of the factors, the strength of the mark and actual confusion are most important. *Fla. Int'l v. Fla. Nat'l*, 830 F.3d 1242, 1255 (11th Cir. 2016). The factors are simply a guide and "imply no mathematical precision." *Custom Mfg. and Engineering, Inc. v. Midway Srvs., Inc.*, 508 F.3d 641, 650 (11th Cir. 2007) (citation omitted). "The ultimate question remains whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way." *Id.* Based on the alleged facts, the Court may infer that the factors tend toward likely confusion.

    a.  <u>Type of Mark</u>

11

There are four categories of mark, based on "the relationship between the name and the service or good it describes." *Frehling Enters., Inc. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999). Marks are either generic, descriptive, suggestive, or arbitrary. *Id.* Generic marks "refer to a class of which an individual service is a member (e.g., 'liquor store' used in connection with the sale of liquor)" and are the weakest. *Id.* Slightly stronger are descriptive marks, which "describe a characteristic or quality of an article or service (e.g., 'vision center' denoting a place where glasses are sold)." *Id.* Next, suggestive marks "suggest characteristics of the goods and services and require an effort of the imagination by the consumer in order to be understood as descriptive" (e.g., "penguin would be suggestive of refrigerators"). *Id.* Finally, an arbitrary mark "bears no relationship to the product (e.g., 'Sun Bank' is arbitrary when applied to banking services)." *Id.*

The Court finds that, as a mark for a moving and junk removal service, "College Hunks Hauling Junk" is at least suggestive if not arbitrary. Additionally, at least some of the CHHJ marks are incontestable. Dkt. 25 ¶ 76. An incontestable mark is a "fairly strong mark." *Frehling*, 192 F.3d at 1336. This important factor weighs in favor of likely confusion.

    b. <u>Similarity of the Marks, Services, Sales Methods, and Advertising Methods</u>

The Amended Complaint asserts that the marks used by Defendants, services offered by Defendants, and sales and advertising methods employed by Defendants

12

are "identical" to those of Plaintiff. Dkt. 25 ¶ 76. In support, the Complaint includes images of the marks, *id.* ¶¶ 64–66, alleges that "Defendants are simply continuing their identical business under a new name," *id.* ¶ 76, and states that other CHHJ franchises utilize the same websites to advertise, *id.* In response, Defendants simply repeat their argument that they were not operating a competing business at the time the websites were active. Dkt. 29 at 18. These factors also weigh in favor of likely confusion.

   c. Defendant's Intent

To show intent, a complaint may allege facts that show a conscious intent, intentional blindness, or some other manifestation of improper intent. *Custom Mfg. and Engineering, Inc.*, 508 F.3d at 648. A plaintiff can show confusion without showing the defendant intended to infringe. *Express Franchise Srvs.*, 244 F. Supp. 3d at 1383. The instant Complaint did not allege any facts showing intent.

   d. Actual Confusion

Courts assessing actual confusion consider "*who* was confused and *how* they were confused." *Fla. Int'l*, 830 F.3d at 1264 (quoting *Safeway Stores, Inc. v. Safeway Discount Drugs, Inc.*, 675 F.2d 1160, 1167 (11th. Cir. 1982)). "Actual confusion" means just that: a plaintiff must produce real consumers who were confused. *See Tana v. Dantanna's*, 611 F.3d 767, 779 (11th Cir. 2010) (noting that "significant evidence" is required to find actual confusion); *Fla. Int'l*, 830 F.3d at 1264 (finding

13

that a plaintiff who produced only one confused consumer did not show actual confusion). While actual confusion is the most dispositive factor, it is not strictly necessary to prove an infringement claim. *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 978 (11th Cir. 1983).

Plaintiff does not put forth any specific customers who were confused by Defendant's alleged infringement. *See generally* Dkt. 25. Instead, Plaintiff asserts that "[c]onsumers that dial multiple of the phone numbers currently being used by Defendants in connection with CHHJ's trademarks will instead reach" Spaulding Hauling "and may never know that they are not in fact receiving services from CHHJ." Dkt. 25 ¶ 77. As further evidence of potential confusion, Plaintiffs cite that Spaulding Hauling uses the same physical address as the former CHHJ franchise, *id.* ¶ 76, and that, while the exterior sign was displayed, Defendants posted the address on a Facebook page, *id.* ¶¶ 67–70, and parked a truck branded "Spaulding Hauling & Moving" outside the physical office space, *id.* ¶ 73.

Defendants respond that, because they do not meet with customers at their physical office space, the exterior signage is unlikely to cause confusion. Dkt. 29 at 16–17. They further argue that the Facebook page had no "likes" or other indication that any consumer saw it, *id.* at 17, and that the identical phone number which was posted on third party websites is no longer in service, *id.* at 18.

14

Because the Amended Complaint failed to identify any actual consumers who were confused, it failed to state facts that tip this factor in Plaintiff's failure. However, the Court is mindful that the parties are at an early stage in litigation. If, after a fair reading, the facts alleged in the Amended Complaint raise Plaintiff's right to relief above the speculative level, it should survive the motion to dismiss. *T-12 Ent., LLC v. Young Kinds Enters., Inc.*, 36 F. Supp. 3d 1380, 1391 (N.D. Ga. 2014).

The Amended Complaint's facts sufficiently allege likely confusion and raise the right to relief above a speculative level. From the allegation that Defendants advertised the Spaulding Hauling phone number and address on third party websites bearing the CHHJ marks, the Court may infer that some potential customers who contacted Spaulding Hauling believed they were contacting CHHJ. Similarly, the Court infers that some customers who obtained Spaulding Hauling's physical address from these third-party websites bearing the CHHJ marks may have been further confused if they visited the physical offices and observed CHHJ signage.

The Amended Complaint adequately pleads likely confusion.

   iii.   *At the Motion to Dismiss stage, the Court does not consider Defendants' alleged competing facts.*

When considering the Motion to Dismiss, the Court must accept the Amended Complaint's factual allegations as true and view them in the light most

15

favorable to Plaintiff. This is not to say that Defendants did not build a compelling theory with their competing facts. The Court finds it entirely plausible that Defendants shut down Spaulding Hauling upon receipt of the termination letter, disconnected the identical phone line, and discontinued use of the CHHJ mark as quickly as possible given the constraints of working with third party websites and a landlord. *See* Dkt. 29 at 16–18. Defendants' problem is that the Court also finds it plausible that they operated a competing business, used the CHHJ marks in connection with sales and advertising for that business, and confused customers along the way. *See* Dkt. 25 at 25–27. The Court must treat Plaintiff's facts as true. It cannot consider competing facts alleged in the Motion to Dismiss, particularly given Plaintiff's contention that discovery will prove Defendants' allegations untrue. Dkt. 32 at 3. If, as Defendants accuse, Plaintiff is attempting to "pull a fast one" with outdated evidence, Dkt. 33 at 8, that will come out as the case progresses. There is insufficient data for the Court to draw such a conclusion now.

Because it adequately pleads that CHHJ possesses valid marks, and that Defendants used those marks in commerce in connection with sales and advertising in a manner likely to cause confusion, the Complaint states a claim for trademark infringement. It therefore states claims for unfair competition under the Lanham Act and Florida common law. Counts III, IV, and V survive the motion to dismiss.

## B. Counts VI and VII: Requests for Injunctive Relief and Attorneys Fees

Defendants argue that Plaintiffs' requests for preliminary and permanent injunctions and attorneys fees "are little more than remedies . . . rather than independent causes of action" and should therefore be dismissed. Dkt. 29 at 22. As explained below, the Court agrees.

    i.    *Plaintiff's request for injunctive relief cannot form the basis of a separate cause of action and is due to be denied.*

Plaintiff's request for preliminary injunctive relief is due to be denied for three reasons: (1) injunctive relief cannot form the basis of a separate cause of action; (2) Defendants have not received adequate notice; and (3) Plaintiff did not meet its high burden of persuasion.

An injunction is a remedy, rather than a separate, standalone cause of action. *Alabama V. U.S. Army Corp. of Engineers*, 424 F.3d 1117, 1127 (11th Cir. 2005); *Rubinstein v. Keshet Inter Vivos Trust*, No. 17-61019-Civ-WILLIAMS/TORRES, 2018 WL 3730875, at *7 (S.D. Fla. June 11, 2018) ("[T]here are an abundance of cases establishing that injunctive relief is a remedy, not a separate cause of action."), report and recommendation adopted by No. 17-61019-CIV-WILLIAMS, 2018 WL 3730867 (S.D. Fla. June 27, 2018). Indeed, Federal Rule of Civil Procedure 65 references a separate "*motion* for a preliminary injunction." Fed. R. Civ. P. 65 (emphasis added).

Even if this Court were to accept Count VI as a proper vehicle through which to request injunctive relief, *see ATP Science Proprietary, Ltd. v. Bacarella*, No.: 20-cv-60827-SINGHAL, 2020 WL 3868701, at *3 (S.D. Fla. July 9, 2020), it would still be unable to grant a preliminary injunction based on the Complaint alone. "In order for a preliminary injunction to issue, the nonmoving party must have notice and an opportunity to present its opposition to the injunction." *Four Seasons Hotels and Resorts v. Consorcio Barr, S.A.*, 320 F.3d 1205, 1210 (11th Cir. 2003). "[T]he notice requirement implies a hearing," especially in cases where "facts are bitterly contested and credibility determinations must be made." *Id.* at 1210–1211. Further, a preliminary injunction is "an extraordinary and drastic remedy not to be granted unless the movant clearly established the burden of persuasion as to each of the four prerequisites."[1] *Id.* at 1210.

The instant matter is a case of bitterly contested facts. Indeed, Defendants deny a significant percentage of the factual basis for Plaintiff's claims. Most notably, Defendants allege that, upon termination of the Franchise agreement, they immediately ceased operating a competing junk hauling business. Dkt. 29 at 8–9.

---

[1] To obtain a preliminary injunction, the movant must show: "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Four Seasons*, 320 F.3d at 1210.

As injunctions are "limited to prospective relief," *Alabama*, 424 F.3d at 1133, this contested fact alone justifies an evidentiary hearing.

Additionally, Plaintiff falls far short of meeting its burden of persuasion. It makes only the barest assertions as to likelihood of success and irreparable injury, and it does not address damage to Defendants or the impact of an injunction on the public interest. Dkt. 25 ¶¶ 105–107. The Court cannot grant extraordinary relief on such a thin basis.

Count VI is dismissed without prejudice. Plaintiff may seek a preliminary injunction as a properly-pled remedy.

   ii.  *Plaintiff's request for attorneys fees is a remedy, not an independent cause of action.*

Count VII is a request for attorneys fees under the Franchise Agreement and the Lanham Act. The Franchise Agreement is governed by Florida law, Dkt. 25-2 ¶ 22.8, under which attorneys fees are a remedy, not an independent cause of action. *Omnipol, a.S. v. Worrell*, 421 F. Supp. 3d 1321, 1353 (M.D. Fla. 2019). And under federal law, "unless otherwise specified by statute, a request for an award of attorneys' fees is simply a demand for a particular remedy rather than an independent cause of action." *Benhassine v. Star Taxi, Inc.*, No. 6:12–cv–1508–Orl–37GJK, 2014 WL 12628588, at *2 (M.D. Fla. Mar. 10, 2014) (quotation omitted) (explaining that, while including a request for fees in a pleading is appropriate, the request should be structured as a prayer for relief).

19

Section 1117 of the Lanham Act provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." Nothing in the Act creates an independent cause of action. Attorneys fees are a remedy that must be prayed for, not a standalone cause of action. Count VII is dismissed.

Because the Court did not dismiss Plaintiff's claims arising under federal law, it may continue to exercise supplemental jurisdiction over the state law claims. 28 U.S.C. § 1367.

## CONCLUSION

Accordingly, it is hereby **ORDERED** and **ADJUDGED** that Defendants' Motion to Dismiss (Dkt. 29) is **GRANTED IN PART** and **DENIED IN PART**. Counts VI and VII are dismissed without prejudice. Should Plaintiff wish to amend, it must do so within twenty-one (21) days.

**DONE** and **ORDERED** at Tampa, Florida, on January 22, 2024.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**Copies Provided To**
Counsel of Record